IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SHAWN O'DONNELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-0254-CV-W-NKL-SSA |
| | ) |
| JO ANNE B. BARNHART, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

ORDER

Pending before the Court is Plaintiff Shawn O'Donnell's ("O'Donnell") Motion for Summary Judgment [Doc. # 7]. O'Donnell seeks judicial review of the Commissioner's denial of his requests for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, *et seq.* The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Because the Court finds that the Administrative Law Judge's decision is supported by substantial evidence in the record as a whole, the Court affirms the ALJ's decision.

I.  **Background**

   A.  **Medical Records**

---

[1] Upon review of the record and the law, the Court finds the Defendant's position persuasive. Portions of the Defendant's brief are adopted without quotation designated.

1

O'Donnell's medical records indicated that he was diagnosed in January 2003 with severe three vessel coronary artery disease and underwent coronary artery bypass surgery. In a May 2003 follow-up visit, his treating cardiologist, Steve Gollub, M.D., indicated that O'Donnell was recovery well and had no angina or congestive symptoms. The doctor advised no extreme or strenuous activity, and opined that O'Donnell should not return to his previous job as an electrician because it involved strenuous activity. Still, the doctor cleared O'Donnell for mild to moderate activity. (Tr. 259.)

On June 10, 2003, Dr. Gollub again saw O'Donnell and noted that he was experiencing no chest discomfort, congestive symptoms, palpitations, sensation of tachycardia, ligheteheadedness or syncope. His exercise tolerance was stable and good, and his surgery was reported as "excellent." (Tr. 254-56.) On June 25, 2003, O'Donnell was again seen by Dr. Wilson for an assessment of is ability to work. Dr. Wilson concurred with Dr. Gollub that O'Donnell should be limited to light or moderate work.

Follow up visits on August 22, 2003, November 11, 2003, and April 2004 were all unremarkable and with identical findings to those on June 10, 2003. In October 2004, O'Donnell was seen at the Memory Disorders Clinic at the University of Kansas Medical Center for symptoms of short-term memory loss. Dr. Burns performed an MRI and discovered no physical source of the symptoms. He opined that the memory loss could be due to the cardiac surgery and would probably be a chronic condition. (Tr. 281.) No other medical records indicate symptoms of memory loss.

**B.     Hearing Testimony**

O'Donnell testified at a hearing before the Administrative Law Judge on October 5, 2004, along with his wife, Janice, and vocational expert, Lee Knutson ("Knutson"). O'Donnell testified that he was 44 years of age, had a 12th grade education, and had some apprentice training as a union electrician. He testified that he had been an electrician for 15 to 20 years, and that he was on disability through his union. He further testified that he was making $80,000.00 or $90,000.00 a year as an electrician before he stopped working.

He testified that since his heart operation he has a hard time remembering, and that he tires easily. For example, he stated that when sweeping out the garage, he would have to sit down and rest within maybe 30 minutes. (Tr. 299.) He further testified that he has a hard time breathing at times and had problems during a stress test. (Tr. 300.) He further testified that his neighbor helps him sweep out his pool. O'Donnell stated he might be able to sit for a half hour during an 8 hour day, could "lift a 10 pound bag of chicken wings," and walks a mile every other day. (Tr. 307.) He testified that he drives, does not smoke, and very rarely drinks, maybe once a month. (Tr. 308.)

O'Donnell's wife, Janice, testified that she and her husband had been married for four years, and that O'Donnell was quite forgetful in that he had forgotten to close the fence gate, turn off the water from watering flowers, and turn off the oven. (Tr. 311.) She further testified that he got really agitated because they changed insurance companies, and he could not remember if he paid them or not. (Tr. 312.)

Knutson testified that O'Donnell worked as a journeyman electrician, a medium skilled job. (Tr. 318.) He further testified that this was the only job he had during the last 15 years (Tr. 318), but that his current exertional limitations would preclude further work as an electrician (Tr. 319). Assuming O'Donnell was limited to sedentary jobs, Knutson testified that there were approximately 630 jobs for bench assembly locally, and 140,000 nationally; 410 jobs for inspection, tester locally, and 12,000 nationally. O'Donnell testified that the limitation of frequent rest periods per day, frequent meaning four to five rest periods per day lasting 15 minutes to half an hour, would eliminate most of those jobs. He also testified that an inability to concentrate would also eliminate most of those jobs as well.

### C.     ALJ's Decision

On November 26, 2004, Administrative Law Judge William G. Horne found that O'Donnell had the following severe impairments: history of hypertension and hyperlipidemia; and coronary artery disease, status post coronary artery bypass. Nonetheless, he concluded that O'Donnell did not have impairments, considered singularly or in combination, which met or equaled any criteria contained in the Listing of Impairments in Appendix 1, Subpart P of Regulations No. 4.

The ALJ found O'Donnell's and his wife's testimony, with respect to the severity of O'Donnell's overall medical condition and inability to perform any type of gainful employment, not to be credible. The ALJ further found O'Donnell was limited to work in the light exertional category with certain restrictions. He would require a sit/stand

4

option at will, and should not have to work in extremes of temperature and humidity. He would also be precluded from working at unprotected heights and around dangerous, moving machinery, with no climbing of ladders or scaffolds. Ultimately, the ALJ found that O'Donnell was unable to perform his past relevant work; however, based on an exertional capacity for sedentary work activity, according to the vocational expert, and claimant's age, education and past relevant work experience, the ALJ found that O'Donnell was not disabled.

## II. Discussion

### A. Statement of the Issues

O'Donnel raises several challenges to the ALJ's decision that he is not disabled. Chiefly, these challenges are (1) whether the ALJ properly considered all the credible evidence, including the medical opinion evidence, in determining Plaintiff's residual functional capacity (RFC); and (2) whether the ALJ properly found that Plaintiff could perform work existing in significant numbers in the national economy.

### B. Standard of Review

The standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See Johnson v. Chater*, 108 F.3d 178, 179 (8th Cir. 1997). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support the Commissioner's conclusion. *See Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as substantial evidence in the record supports the

Commissioner's decision, the court may not reverse it either because substantial evidence exists in the record that would have supported a contrary outcome or because the court would have decided the case differently. *See Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001). If, after reviewing the record, the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Court must affirm the decision of the Commissioner. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (citations omitted). The Eighth Circuit has noted that "[w]e defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

    **C.    Analysis**

           **1.    The ALJ Properly Considered all the Credible Evidence, Including the Medical Opinion Evidence, In Determining Plaintiff's Residual Functional Capacity (RFC)**

The ALJ's decision is consistent with the standard for evaluating pain and other subjective complaints as set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and the regulations at 20 C.F.R. § 404.1529 (2005). In *Polaski*, the Eighth Circuit set forth factors the Commissioner must consider in evaluating subjective complaints. The ALJ is not required to discuss each factor under *Polaski* in a methodical fashion before discounting Plaintiff's subjective complaints, so long as the ALJ acknowledged and considered those factors. *See Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996). In this case, the ALJ provided a proper analysis. (Tr. 20-24.)

6

Case 4:05-cv-00254-NKL   Document 11   Filed 11/23/05   Page 6 of 12

The ALJ considered the objective medical evidence which indicated that O'Donnell had recovered well from his coronary bypass surgery in January 2003. (Tr. 22.) In May 2003, Plaintiff's treating cardiologist, Dr. Gollub, noted that O'Donnell was doing well following coronary bypass surgery. (Tr. 259.) Plaintiff had no angina and no congestive symptoms. (Tr. 259.) In November 2003, Plaintiff was reported to be doing very well, with no chest discomfort, congestive symptoms, palpitations, sensation of tachycardia, lightheadedness, or syncope. (Tr. 22, 244.) Plaintiff was reported to be active, and had good exercise tolerance. (Tr. 22, 244.) The ALJ noted that the last examination in April 2004 was essentially unremarkable and Plaintiff was noted to be doing very well. (Tr. 22, 241.) An electrocardiogram revealed normal sinus rhythm. (Tr. 241.)

Moreover, the credible medical opinion evidence supported the ALJ's decision. As the ALJ noted, no physician of record has opined that Plaintiff, secondary to any physical problems, is precluded from performing all types of gainful employment. (Tr. 22.) Dr. Gollub thought Plaintiff would be capable of performing mild to moderate activity. (Tr. 259.)

The ALJ also considered, on the basis of Plaintiff's wife's testimony, that although Plaintiff had some memory problems, he engaged in activities that were inconsistent with his claimed disability, including paying bills on the internet. (Tr. 23, 311-12.) The Eighth Circuit has noted that activities that are inconsistent with a claimant's assertion of

7

disability reflect negatively upon that claimant's credibility. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001).

In addition, the ALJ noted that although Plaintiff testified to severe problems with his short term memory, the medical records from Mid-America Cardiology do not reflect any complaints or problems with short-term memory. (Tr. 23, 239-78.) Moreover, an MRI of Plaintiff's head on October 22, 2004, did not reveal anything to indicate the reason for Plaintiff's memory difficulties. (Tr. 23, 281.) Moreover, an April 2004 neurologic examination revealed good cognitive function. (Tr. 241.) There is simply nothing in the record to suggest a basis for a memory problem that is sufficiently severe to preclude all gainful employment.

The ALJ adequately considered the third party testimony and properly discounted it for the same reasons that he discounted Plaintiff's testimony. (Tr. 23-24.) *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000), (citing *Lorenzen v. Chater*, 71 F.3d 316, 319 (8th Cir.1995)). As in the Young case, the statements of Plaintiff's friends and relatives in this case were devoid of specific information that could contradict the medical evidence regarding Plaintiff's capabilities. *See Young*, 221 F.3d at 1068-69.

In sum, the ALJ considered the totality of the record consistently with the regulations at 20 C.F.R. § 404.1529 (2005), and *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). In doing so the ALJ properly considered significant factors, including: the objective medical evidence, which showed that Plaintiff had recovered from his heart bypass; the credible medical opinion evidence; Plaintiff's activities; and the absence of

evidence showing disabling mental problems. (Tr. 23.) Consequently, substantial evidence supports the ALJ's decision that Plaintiff was not fully credible.

After carefully weighing the credibility of Plaintiff and the witnesses, the ALJ formulated Plaintiff's residual functional capacity. The Eighth Circuit has noted that residual functional capacity is a determination based upon all the record evidence. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217-1218 (8th Cir. 2001) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); *Dykes v. Apfel*, 223 F.3d 865, 866-67 (8th Cir. 2000) (citing 20 C.F.R. § 404.1545; SSR 96-8p at pp. 8-9). The RFC formulation is a part of the medical portion of a disability adjudication as opposed to the vocational portion, which involves consideration of age, education, and work experience. Although it is a medical question, the RFC findings are not based only on "medical" evidence; i.e., evidence from medical reports or sources; rather an ALJ has the duty, at step four, to formulate the RFC on the basis of all the relevant, credible evidence of records. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations); *Dykes v. Apfel*, 223 F.3d 865, 866-67 (8th Cir. 2000) (per curiam) (RFC is a determination based upon all the record evidence but the record must include some medical evidence that supports the RFC finding). *See also* 20 C.F.R. § 416.945; SSR 96-8p.

9

In this case, the ALJ found that Plaintiff had the residual functional capacity for a range of light work where he was limited to unskilled, simple, repetitive, routine jobs, and where reading and writing would be very limited. (Tr. 25.) The ALJ further found Plaintiff required work which had a sit/stand option at will, and should not have to work in extremes of temperature and humidity. (Tr. 25.) Plaintiff was precluded from working at unprotected heights and around dangerous, moving machinery, with no climbing of ladders or scaffolds. (Tr. 25.) As was noted above, the objective medical evidence demonstrated that Plaintiff had recovered from his artery bypass surgery. (Tr. 25.) The ALJ also considered that none of Plaintiff's treating physicians believed he was disabled for any physical reason. (Tr. 22.) Finally, the ALJ's finding that Plaintiff was limited to unskilled, simple, repetitive, routine job tasks where reading/writing would be very limited, adequately accounted for Plaintiff's memory difficulties to the extent that they were credible. (Tr. 25.) In sum, there is at least substantial evidence on the record as a whole to support the ALJ's residual functional capacity findings.

### 2. The ALJ Properly Determined That Plaintiff Could Perform Work Existing in Significant Numbers in the National Economy.

The testimony of the vocational expert supported the ALJ's determination that Plaintiff was not disabled. Asked a hypothetical question which set forth Plaintiff's limitations in a manner consistent with the ALJ's eventual findings concerning Plaintiff's condition and functional limitations, the vocational expert testified that while Plaintiff could not perform his past relevant work, Plaintiff could perform a range of light work

10

existing in significant numbers in the local and national economies, including bench assembler and visual inspector. (Tr. 320-21.)

Although the hypothetical question must set forth with reasonable precision the claimant's impairments, *Starr v. Sullivan*, 981 F.2d 1006, 1008 (8th Cir. 1992), it need only include those impairments and limitations found credible by the ALJ. *See Pertuis v. Apfel*, 152 F.3d 1006, 1007 (8th Cir. 1998); *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997). Discredited subjective complaints are properly excluded from a hypothetical question so long as the ALJ had reason to discredit them. *See Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). The hypothetical question posed to the vocational expert in this case was properly formulated in that it included only Plaintiff's credible limitations. Because the hypothetical question included those impairments the ALJ found credible, and excluded those he discredited for legally sufficient reasons, the vocational expert's testimony that Plaintiff could perform work existing in substantial numbers, was substantial evidence in support of the ALJ's determination. *See Miller v. Shalala*, 8 F.3d 611, 613-14 (8th Cir. 1993).

### III. Conclusion

A review of the record as a whole reveals that the ALJ's decision is supported by substantial evidence. Accordingly, it is hereby

ORDERED that O'Donnell's Motion for Summary Judgment [Doc. # 7] is DENIED. The decision of the Commissioner is AFFIRMED.

s/ Nanette K. Laughrey
                                                            NANETTE K. LAUGHREY
                                                            United States District Judge

Dated:  November 23, 2005
Jefferson City, Missouri